UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

**5225 CT LENDER LLC**
600 Madison Avenue
17th Floor
New York, New York 10022

               Plaintiff,

v.

**ADAM LOBENE**
1701 Hoban Road NW
Washington, DC 20007

               Defendant.

Docket No. _____

**COMPLAINT**

Plaintiff 5225 CT LENDER, LLC ("5225"), for its Complaint against Defendant Adam Lobene ("Lobene"), alleges as follows:

**Parties and Jurisdiction**

1. 5225 is a New York limited liability company whose principal place of business is located at 600 Madison Avenue, 17th Floor, New York, New York 10022. 5225's members are domiciled in New York.

2. Lobene is an individual, whose, upon information and belief, principal place of business and/or residence is located at 1701 Hoban Road N.W., Washington D.C. 20007.

3. The Court has jurisdiction over the subject matter of this action pursuant to 28 U.S.C. §1332(a).

4. The Court has jurisdiction over the parties, who consented to the governing law provisions in the underlying agreements, which provide that the Defendant consents to jurisdiction in this District.

5. Venue is proper in this District pursuant to 28 U.S.C. §1391.

1

**Facts Common To All Causes Of Action**

6.  On or about January 28, 2025, Maxim Credit Group, LLC ("Maxim") as "Lender," loaned 5225 CONNECTICUT OWNER, LLC and WE 5225 CONNECTICUT AVE LLC (collectively referred to herein as "Borrower"), $10,600,000.00 (the "Loan") as evidenced and secured by a certain Promissory Note dated effective as of January 28, 2025 in the original principal amount of $10,600,000.00 (the "Note").

7.  As further security, on or about January 28, 2025, Lobene entered into and gave Maxim a "Carry Guaranty," whereby Lobene agreed to be personally liable to Maxim for certain amounts Borrower was required to pay pursuant to the Note and other related loan documents (the "Guaranty").

8.  Pursuant to Paragraph 3 of the Note, Borrower was required to pay, *inter alia*:

    a. One interest only payment upon the execution of the Note;

    b. Commencing on March 1, 2025 and on the first day of each month thereafter through and until July 28, 2026 (the "Maturity Date"), monthly installments of interest only due in accordance with the terms of the Note;

9.  Pursuant to Paragraph 6.1 of the Note, *inter alia*, upon the occurrence of any "Event of Default," Borrower agreed that all sums, including but not limited to all principal, interest, default interest, late charges, fees, other sums, monies advanced pursuant to other loan documents, costs and expenses incurred by Lender, shall, without notice become immediately due and payable.

10. Pursuant to Paragraph 6.1(a) the Note, an Event of Default includes when "Borrower fails to pay any amount due to Lender under this Note when due and such payment remains unpaid for ten (10) days after the due date thereof."

11. Paragraph 7.1 of the Note provides that "From and after the occurrence of an event of Default, regardless of whether or not there has been notice of default issued by the Note Holder, interest shall accrue on the outstanding Indebtedness, and shall be payable, at a rate equal to 18% per annum for the first sixty (60) days after the occurrence of an Event of Default…."

12. Paragraph 7.2 provides that Except for payment of the Indebtedness due on the Maturity Date or after acceleration, if any payment (or part thereof) provided for herein shall not be made when due, a late charge of six cents ($.06) for each dollar so overdue shall become immediately due and payable to Note Holder as liquidated damages…."

13. Paragraph 7.3 of the Note provides for collection of any attorney's fees and costs by Maxim upon Borrower's Event of Default.

14. Pursuant to Paragraph 2 of the Guaranty, Lobene "irrevocably and unconditionally guarantees and promises to Lender that Guarantor shall pay to Lender…the following amounts:

    a. Any shortfall in the payment of monthly debt service payments, including the failure of Borrower to fund the monthly debt service payments owed pursuant to the Note, until repayment of the Loan;

    b. Any shortfall in the payment of real estate taxes….

    c. Any shortfall in the payment of insurance premium payments…

    d. All sums advanced by Lender…in respect of any breach of Borrower….

15. Paragraph 3 of the Guaranty provides that it is "absolute, unconditional, present and continuing guaranty of payment and performance of the obligations guaranteed by the Guarantor under Paragraph 2 hereof, and not of collection and is not [] conditioned or contingent upon any attempt to enforce Lender's rights against Borrower or to collect from Borrower;

accordingly Lender shall have the right to proceed against Guarantor immediately upon an Event of Default…"

16. As security for the Guaranty, Pursuant to Paragraph 6 thereof, the Guarantor, "grants to the Lender a lien upon and security interest in any and all moneys or other property…deposited or delivered to Lender by or for the account of Guarantor."

17. Paragraph 15 of the Guaranty requires the Lender to pay on demand "the costs and expenses that may be paid or incurred by Lender in the collection or enforcement of all or any portion of the Guarantor's obligations hereunder, including, without limitation, attorney's fees, irrespective of the manner of success of any such collection…"

18. On or about July 1, 2025, Borrower failed to make a debt service payment of approximately $82,812.50, required by Paragraph 3.1(b) of the Note, which remained unpaid for more than ten (10) days resulting in an Event of Default (the "Late July Payment").

19. Although Borrower eventually made the Late July Payment on or about July 28, 2025, Borrower failed to pay $4,968.75 in Late Fees which had occurred as a result and also failed to pay $76,187.50 in Default interest.

20. On or about August 1, 2025, Borrower failed to make a debt service payment of approximately $85,572.92, required by Paragraph 3.1(b) of the Note, which remained unpaid for more than ten (10) days resulting in a further Event of Default, which payment, as of filing still has not been paid (the "Missed August Payment").

21. As a result of the Missed August Payment, a late fee of $5,134.38 as well as Default Interest had accrued.

22. Accordingly, on or about August 28, 2025, Maxim sent Borrower and Guarantor Notice of the Late July Payment, the Missed August Payment and associated Late Fees and accrued

Default Interest and demanded, even though Maxim was under no obligation to do so, that Borrower and Guarantor make payment within three (3) business days.

23. Borrower and Guarantor completely failed to respond and did not make any payment of the amounts due.

24. On or about September 1, 2025, Borrower failed to make a debt service payment of approximately $85,572.92, required by Paragraph 3.1(b) of the Note, which remained unpaid for more than ten (10) days resulting in a further Event of Default, which payment, as of filing still has not been paid (the "Missed September Payment").

25. Accordingly, as a result of the Late July Payment, the Missed August Payment, the Missed September Payment, Borrowers failure to pay associated Late Fees and Default Interest, on or about September 4, 2025, Maxim sent Borrower and Guarantor, even though it had no obligation to do so, a "Notice of Exercise of Certain Rights," which provided the Borrower and Guarantor that the Loan had been accelerated and all outstanding amounts were immediately due and payable.

26. Thereafter Borrower and Guarantor failed to pay amounts due in breach of the Note and Guaranty respectively.

27. On or about September 10, 2025, Maxim, Borrower and Lender entered into a written agreement (the "P/L Agreement"), whereby Guarantor explicitly acknowledged and agreed to the following:

    a. An Event of Default has occurred pursuant to the Loan Documents as described in the Notice sent on or about August 28, 2025

    b. the Loan Documents, as modified, supplemented and/or amended as of the date hereof, are in full force and effect and are binding on Borrower, Guarantor and Lender in accordance with their terms;

    c. Borrower and Guarantor acknowledge and agree that they currently hold no claims against Lender of any kind, including, without limitation, breach of any obligation under the Loan Documents, interference with any of Borrower's or Guarantor's contractual rights under the Loan Documents or otherwise, or breach of any other applicable duties or obligations. Borrower and Guarantor expressly release Lender from all defenses and claims of every kind or nature, whether existing by virtue of state, federal, Bankruptcy or non-Bankruptcy federal law, by agreement or otherwise, whether previously or now existing or arising out of or relating to the Loan Documents and/or Lender's enforcement thereof. Likewise, you expressly waive any defenses of every kind that you may now have or in the future may have to Lender's enforcement of its rights pursuant to the Loan Documents as a result of the Default.

28. On or about September 24, 2025, Maxim assigned the Note, Guaranty and other loan documents to 5225 as Lender.

### AS AND FOR A FIRST CAUSE OF ACTION
**(Breach of Contract)**

29. 5225 repeats and realleges each of the foregoing allegations as though fully restated.

30. The Guaranty is a valid and enforceable contract between 5225 and Guarantor.

31. Guarantor breached the Guaranty by failing to pay:

    a. The Missed August Payment of approximately $85,572.92;

    b. The Missed September Payment of approximately $85,572.92;

    c. Nine monthly debt service payment of approximately $85,572.92 for the months of November 2025, through July 2026, which were accelerated as a result of the Event of Default;

    d. Approximately $55,000 for real estate taxes that were due on or about September 15, 2025

    e. Approximately $17,000 for insurance premiums; and

    f. Approximately $12,000 in legal fees incurred to date as a result of the above missed payments.

32. 5225 has been damaged by Guarantor's breach in an amount to be determined at trial, but believed to be an approximate amount of $1,030,000.

33. Pursuant to the Guaranty, 5225 is entitled to recover all of its attorney's fees and costs incurred in this action.

WHEREFORE, it is respectfully requested that the Court enter judgment in 5225's favor and against Guarantor in an amount to be determined at trial, but believed to be an approximate amount of $1,030,000, together with 5225's costs, reasonable attorney's fees, interest and such further relief as the court deems just and proper.

Dated: September 29, 2025                  Morris Manning & Martin, LLP

                                                By: */s/ Jessica A. Rodriguez*
                                                 Jessica A. Rodriguez (D.C. Bar No. 1024134)
                                                 1333 New Hampshire Ave, N.W.
                                                 Suite 800
                                                 Washington, D.C.  20036
                                                 Phone: (202) 216-4106
                                                 Fax:    (202) 408-5146
                                                 jrodriguez@mmmlaw.com