UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| 5225 CT LENDER LLC,<br><br>       *Plaintiff*,<br>v.<br><br>ADAM LOBENE<br><br>       *Defendant*. | Docket No. 1:25-cv-03487-LLA<br><br>Judge Loren L. AliKhan |

**PLAINTIFF'S MEMORANDUM OF POINTS AND AUTHORITIES IN
SUPPORT OF ITS MOTION FOR DEFAULT JUDGMENT**

Pursuant to Rule 55(a) of the Federal Rules of Civil Procedure, Plaintiff 5225 CT Lender LLC ("Plaintiff"), through its undersigned counsel of record, respectfully requests that judgment by default be entered against Defendant Adam Lobene ("Defendant" or "Lobene") for the reasons set forth below.

### I. PRELIMINARY STATEMENT

Plaintiff commenced this action seeking damages arising out of Defendant's breach of a personal guaranty contract. As alleged in Plaintiff's September 29, 2025 Complaint ("Complaint", ECF 1), Defendant gave a personal guaranty (the "Guaranty") securing a promissory note arising out of a loan transaction concerning real property in Washington D.C. (the "Property"). When the principal borrower defaulted on its debt obligations to Plaintiff, Defendant failed to make the required payments as provided by and in breach of the Guaranty. ECF 1 ¶ 26.

So, Plaintiff commenced this action on September 29, 2025 and, after evading multiple service attempts, Defendant was finally served on October 15, 2025. ECF 4. Defendant was thus required to Answer or otherwise response to the Complaint on November 5, 2025, but did not.

Having failed to do so, Plaintiff requested, and the Clerk entered, a default against Defendant on November 17, 2025. ECF 8. Plaintiff now moves for and is entitled to a default judgment against Defendant pursuant to Federal Rule of Civil Procedure 55(a). Plaintiff's entitlement to such relief is clear and judgment in the amount of $11,862,933.30 plus interest accruing at a rate of $7,066.67 per day should be entered in Plaintiff's favor on default.

## II.     BACKGROUND AND REQUESTED RELIEF

*a.  The Agreements*

On or about January 28, 2025, Maxim Credit Group, LLC ("Maxim") as "Lender," loaned 5225 CONNECTICUT OWNER, LLC and WE 5225 CONNECTICUT AVE LLC (collectively referred to herein as "Borrower"), $10,600,000.00 (the "Loan") as evidenced and secured by a certain Promissory Note dated effective as of January 28, 2025 in the original principal amount of $10,600,000.00 (the "Note"). *Loan,* **Exhibit 1***; Note,* **Exhibit 2**. Paragraph 3 of the Note required Borrower to pay, *inter alia:* (1) One interest only payment upon the execution of the Note and (2) Commencing on March 1, 2025 and on the first day of each month thereafter through and until July 28, 2026 (the "Maturity Date"), monthly installments of interest only due in accordance with the terms of the Note. **Ex. 2**.

Pursuant to Paragraph 6.1 of the Note, *inter alia,* upon the occurrence of any "Event of Default," Borrower agreed that all sums, including but not limited to all principal, interest, default interest, late charges, fees, other sums, monies advanced pursuant to other loan documents, costs and expenses incurred by Lender, shall, without notice become immediately due and payable. *Id*. An Event of Default includes when "Borrower fails to pay any amount due to Lender under this Note when due and such payment remains unpaid for ten (10) days after the due date thereof." *Id*. at ¶ 6.1(a).

The Note further provides that "From and after the occurrence of an event of Default, regardless of whether or not there has been notice of default issued by the Note Holder, interest shall accrue on the outstanding Indebtedness, and shall be payable, at a rate equal to 18% per annum for the first sixty (60) days after the occurrence of an Event of Default…." *Id*. at ¶ 7.1. Additionally, the Note states that if any payment (or part thereof) shall not be made when due, a late charge of six cents ($.06) for each dollar so overdue shall become immediately due and payable to Note Holder as liquidated damages. *Id*. at ¶ 7.2. Finally, Paragraph 7.3 of the Note provides for collection of any attorney's fees and costs by Maxim upon Borrower's Event of Default. *Id*. at ¶ 7.3.

As further security, on or about January 28, 2025, Defendant entered into and gave Maxim the Guaranty whereby Defendant, as "Guarantor", agreed to be personally liable to Maxim for certain amounts Borrower was required to pay pursuant to the Note and other related loan documents. *Guaranty,* **Exhibit 3**. Pursuant to Paragraph 2 of the Guaranty, Defendant "irrevocably and unconditionally guarantees and promises to Lender that Guarantor shall pay to Lender…the following amounts:

   a. Any shortfall in the payment of monthly debt service payments, including the failure of Borrower to fund the monthly debt service payments owed pursuant to the Note, until repayment of the Loan;
   b. Any shortfall in the payment of real estate taxes….
   c. Any shortfall in the payment of insurance premium payments…
   d. All sums advanced by Lender…in respect of any breach of Borrower…."

*Id*. Paragraph 3 of the Guaranty provides that it is "absolute, unconditional, present and continuing guaranty of payment and performance of the obligations guaranteed by the Guarantor under Paragraph 2 hereof, and not of collection and is not [] conditioned or contingent upon any attempt to enforce Lender's rights against Borrower or to collect from Borrower; accordingly Lender shall have the right to proceed against Guarantor immediately upon an Event of Default…" *Id*.

3

As security for the Guaranty, Pursuant to Paragraph 6 thereof, Defendant, "grants to the Lender a lien upon and security interest in any and all moneys or other property…deposited or delivered to Lender by or for the account of Guarantor." *Id*. Paragraph 15 of the Guaranty also requires Defendant to pay on demand "the costs and expenses that may be paid or incurred by Lender in the collection or enforcement of all or any portion of the Guarantor's obligations hereunder, including, without limitation, attorney's fees, irrespective of the manner of success of any such collection…" *Id*.

    b. *Defendant's Defaults*

On or about July 1, 2025, Borrower failed to make a debt service payment of approximately $82,812.50, required by Paragraph 3.1(b) of the Note, which remained unpaid for more than ten (10) days resulting in an Event of Default (the "Late July Payment"). *Brian Steiner Declaration,* **Exhibit 4** ¶ 10. Although Borrower eventually made the Late July Payment on or about July 28, 2025, Borrower failed to pay $4,968.75 in Late Fees which had occurred as a result and also failed to pay $76,187.50 in Default Interest. *Id*. at ¶ 11. On or about August 1, 2025, Borrower also failed to make a debt service payment of approximately $85,572.92, required by Paragraph 3.1(b) of the Note, which remained unpaid for more than ten (10) days resulting in a further Event of Default (the "Missed August Payment"). *Id*. at ¶ 12.

Accordingly, on or about August 28, 2025, Maxim sent Borrower and Defendant, as Guarantor, Notice of the Late July Payment, the Missed August Payment and associated Late Fees and accrued Default Interest and demanded, even though Maxim was under no obligation to do so, that Borrower and Defendant make payment within three (3) business days. *Id*. at ¶ 13. However, Borrower and Defendant failed to respond and did not make any payment of the amounts due. *Id*. at ¶ 14. On or about September 1, 2025, Borrower again failed to make a debt

service payment of approximately $85,572.92 which remained unpaid for more than ten (10) days resulting in an additional Event of Default (the "Missed September Payment"). *Id*. at ¶ 15.

Accordingly, on or about September 4, 2025, Maxim sent Borrower and Defendant, even though it had no obligation to do so, a "Notice of Exercise of Certain Rights," which notified the Borrower and Defendant that the Loan had been accelerated and all outstanding amounts were immediately due and payable as a result of the Late July Payment, the Missed August Payment, the Missed September Payment, Borrowers failure to pay associated Late Fees and Default Interest. *Id*. at ¶ 16. Thereafter Borrower and Defendant failed to pay amounts due in breach of the Note and Guaranty respectively. *Id*. at ¶ 18.

On or about September 10, 2025, Maxim, Borrower and Lender entered into a written agreement (the "P/L Agreement"), whereby Defendant explicitly acknowledged and agreed to the following:

   a. An Event of Default has occurred pursuant to the Loan Documents as described in the Notice sent on or about August 28, 2025

   b. the Loan Documents, as modified, supplemented and/or amended as of the date hereof, are in full force and effect and are binding on Borrower, Guarantor and Lender in accordance with their terms;

   c. Borrower and Guarantor acknowledge and agree that they currently hold no claims against Lender of any kind, including, without limitation, breach of any obligation under the Loan Documents, interference with any of Borrower's or Guarantor's contractual rights under the Loan Documents or otherwise, or breach of any other applicable duties or obligations. Borrower and Guarantor expressly release Lender from all defenses and claims of every kind or nature, whether existing by virtue of state, federal, Bankruptcy or non-Bankruptcy federal law, by agreement or otherwise, whether previously or now existing or arising out of or relating to the Loan Documents and/or Lender's enforcement thereof. Likewise, you expressly waive any defenses of every kind that you may now have or in the future may have to Lender's enforcement of its rights pursuant to the Loan Documents as a result of the Default.

*P/L Agreement*, **Exhibit 5**.

On or about September 24, 2025, Maxim assigned the Note, Guaranty and other loan documents to Plaintiff as Lender. *Assignments*, **Exhibit 6**. Plaintiff then filed its Complaint on September 29, 2025. ECF 1. Defendant was personally served with the Complaint on October 15, 2025 at 1701 Hoban Road Northwest, Washington, DC 20007. ECF 4. Pursuant to Fed. R. Civ. P. 12(a), Defendant was required to file a responsive pleading to Plaintiff's Complaint within twenty-one (21) days of service (here, November 5, 2025).[1]

Defendant did not file a response by November 5, 2025, has not entered an appearance in this action, and has not otherwise requested or obtained any additional time to respond to the Complaint. Accordingly, on November 14, 2025, Plaintiff filed an affidavit in support of request for entry of default against Defendant (ECF 5) and default was entered by the Clerk on November 17, 2025 (ECF 8).

Plaintiff's Complaint requests that the Court enter judgment in Plaintiff's favor against Defendant for breach of contract. ECF 1. As of December 4, 2025, Defendant owes the principal balance of $10,600,000.00, $1,132,654.17 in accrued interest from July 1, 2025 to December 4, 2025, $20,279.13 in late charges, and $110,000 in legal fees. *Payoff Demand*, **Exhibit 7**. By this Motion, Plaintiff seeks judgment by default for that breach of contract cause of action and seeks actual damages totaling $11,862,933.30 together with Plaintiff's costs, reasonable attorneys' fees, interest and such further relief as the court deems just and proper.

   c. *Foreclosure Sale of the Property*

As referenced above, the Note is secured by a lien encumbering the Property, which is located at 5225 Connecticut Avenue NW, Washington, DC, 20015, as evidenced by a Deed of Trust, Assignment of Leases and Rents and Security Agreement (the "Deed of Trust"). *Note*, **Ex.**

---

[1]   Thereafter, Borrower failed to make required payments for November and December as well.

**2** at 2; *Deed of Trust*, **Exhibit 8**. Following Borrower's defaults, Plaintiff exercised its right to foreclose on the Property under the Deed of Trust and D.C. Law. A non-judicial foreclosure sale was held on December 4, 2025, and the Property sold for $13,900,000.00. *Memorandum of Purchase*, **Exhibit 9**. In accordance with the terms of sale, settlement must be consummated within 45 days of the sale, or by January 20, 2026. *Id.* at 3. Unless and until the sale is consummated, Defendant remains liable for all amounts owed under the Note and the Guaranty.

### III. DEFAULT JUDGMENT LEGAL STANDARD

Fed. R. Civ. P. 55 outlines a two-step process for the entry of default judgment against a non-responsive defendant. See *Kymber Consulting Grp. v. Cato*, No. 1:22-cv-1042 (JMC), 2022 WL 7488185, at *2 (D.D.C. Oct. 13, 2022). A plaintiff must first request that the Clerk of the Court enter default against the defendant by providing evidence to the Clerk of the defendant's failure to plead. F.R.C.P. 55(a). On November 14, 2025, Plaintiff filed an affidavit in support of request for entry of default against Defendant, (ECF 5), and default was entered by the Clerk on November 17, 2025. (ECF 8.) Thereafter, a plaintiff must move the Court for entry of default judgment, which Plaintiff does here through this Motion. F.R.C.P. 55(b)(2).

A default judgment is appropriate when a defendant is "a 'totally unresponsive' party and its default plainly willful, reflected by its failure to respond to the summons and complaint, the entry of default, or the motion for default judgment." *Hanley-Wood LLC v. Hanley Wood LLC*, 783 F. Supp. 2d 147, 150 (D.D.C. 2011) (citing *Gutierrez v. Berg Contracting Inc.*, No. 99–3044, 2000 WL 331721, at *1 (D.D.C. Mar. 20, 2000)). In the absence of a "request to set aside the default or suggestion by the defendant that it has a meritorious defense," the standard for default judgment has been satisfied. *Id*. (internal citations and quotation marks omitted); *see also Int'l*

*Painters & Allied Trades Indus. Pension Fund v. Auxier Drywall, LLC*, 531 F. Supp. 2d 56, 57 (D.D.C. 2008).

A party seeking default judgment can "rest [its] arguments on [its] pleadings because, upon entry of default, the 'defaulting defendant is deemed to admit every well-pleaded allegation in the complaint.'" *Kymber*, 2022 WL 7488185, at *2 (quoting *Int'l Painters & Allied Trades Indus. Pension Fund v. R.W. Amrine Drywall Co.*, 239 F. Supp. 2d 26, 30 (D.D.C. 2002)). The relief awarded on a default judgment may include injunctive relief in addition to damages. *See Foxtrap, Inc. v. Foxtrap, Inc.*, 671 F.2d 636, 639 (D.C. Cir. 1982); *Lifted Research Group, Inc. v. Behdad, Inc.*, 591 F. Supp. 2d 3, 7–8 (D.D.C. 2008).[2]

## IV.  PLAINTIFF IS ENTITLED TO DEFAULT JUDGMENT AGAINST DEFENDANT

The well-pleaded allegations in Plaintiff's Complaint establish that judgment is warranted against Defendant on Plaintiff's breach of contract claim, as set forth below.

### a. Plaintiff's Cause of Action for Breach of Contract

Under District of Columbia law, "a party asserting breach of contract must prove four elements: (1) a valid contract between the parties; (2) an obligation or duty arising out of the contract; (3) a breach of that duty; and (4) damages caused by breach." CorpCar Servs. Hous., Ltd. v. Carey Licensing, Inc., 325 A.3d 1235, 1244-45 (D.C. 2024) (citation modified).

---

[2]  Before entering judgment against an absent defendant, the Court must also assure itself that it has both subject matter jurisdiction and personal jurisdiction over the defaulting defendant. *See Enter. Holdings, Inc. v. Enterprisecarrentals.com*, No. 11–1152, 2012 WL 527355, at *3 (E.D.Va. Jan. 30, 2012) (noting that "[a] court must have both subject matter and personal or in rem jurisdiction over a defaulting defendant before it can render a default judgment"), adopted in 2012 WL 527353 (E.D. Va. Feb. 16, 2012). The Court has both subject matter jurisdiction over Plaintiff's claims pursuant to 28 U.S.C. §1332(a) and personal jurisdiction over Defendant because Defendant is an individual whose principal place of business and/or residence is located at 1701 Hoban Road N.W., Washington D.C. 20007, Plaintiff is a New York limited liability company with members domiciled in New York, and this controversy exceeds the sum or value of $75,000. (ECF 1 ¶ 1-5.)

The following representative well-pleaded allegations of the Complaint, which are deemed admitted, establish Defendant's liability for breach of contract:

1. The Guaranty is a valid and enforceable contract between Plaintiff and Defendant Lobene as Guarantor. *See* ECF 1 ¶ 30 and **Ex. 3**.

2. On or about January 28, 2025, Defendant entered into and gave Maxim a "Carry Guaranty," whereby Defendant agreed to be personally liable to Maxim for certain amounts Borrower was required to pay pursuant to the Note and other related loan documents (the "Guaranty"). *See* ECF 1 ¶¶ 7, 14-17 and **Ex. 3**.

3. Defendant breached the Guaranty by failing to pay the Missed August Payment, Missed September Payment, nine monthly debt service payments which were accelerated as a result of the Event of Default, real estate taxes, insurance premiums, and legal fees as required by the Guaranty. *See* ECF 1 ¶¶ 18-26, 31) and **Ex. 4 ¶¶ 10-18**.

4. Plaintiff has been damaged by Defendant's breach in an amount believed to be approximately $11,862,933.30. *See* **Ex. 4** ¶ 21, and **Ex. 7**.

The foregoing facts establish that Defendant Lobene breached the Guaranty and is thus liable for same.

## V.  DEFENDANT'S DEFAULT ENTITLES PLAINTIFF TO RELIEF

The relief awarded on a default judgment may include injunctive relief in addition to damages, but the relief awarded in a judgment by default "must not differ in kind from, or exceed in amount, what is demanded in the pleadings." Fed. R. Civ. P. 54(c); *see also, Foxtrap, Inc.*, 671 F.2d at 639; *Lifted Research*, 591 F. Supp. 2d at 7-8.

Plaintiff's Complaint alleges damages in an amount to be determined at trial for Defendant's breach of the Guaranty. ECF 1 ¶ 32. As provided for in the Note and the Guaranty, these damages total no less than $11,862,933.30 and include: (i) the principal balance of $10,600,000.00; (ii) $1,132,654.17 in accrued interest from July 1, 2025 to December 4, 2025; (iii) $20,279.13 in late charges; and (iv) $110,000 in attorneys' fees. **Ex. 4, ¶ 21**. Plaintiff's Motion for Default Judgment requests relief in that exact amount totaling $11,862,933.30, as well

9

as interest for each day following December 4, 2025 accruing at a rate of $7,0667.67 per day and reasonable attorneys' fees. If Plaintiff receives any funds in connection with the foreclosure sale of the Property, such funds will be credited against the judgment. Accordingly, the Court should grant Plaintiff's Motion for Default Judgment and enter judgment in Plaintiff's favor as set forth in the Proposed Order attached to this Motion.

## VI.   CONCLUSION

For the foregoing reasons, Plaintiff respectfully requests that the Court enter default judgment against Defendant Adam Lobene and award all remedies requested in Plaintiff's accompanying Proposed Order including reasonable attorneys' fees, and any further relief the Court deems fit and just.

Dated: December 17, 2025                Respectfully submitted,

*/s/ Jessica A. Rodriguez*
Jessica A. Rodriguez (D.C. Bar No. 1024134)
MORRIS, MANNING & MARTIN, LLP
1333 New Hampshire Ave, N.W.
Suite 800
Washington, D.C.  20036
Phone: (202) 216-4106
Fax:    (202) 408-5146
jessica.rodriguez@mmmlaw.com

*Counsel for Plaintiff 5225 CT Lender LLC*