**EXHIBIT 1**

# PLEDGE AND SECURITY AGREEMENT

THIS PLEDGE AND SECURITY AGREEMENT (as may be amended, restated or otherwise modified from time to time, this "**Agreement**"), is made effective as of January 28, 2025 by and between PROJECT DC CHEVY CHASE LLC, a Delaware limited liability company having an address for purposes of notices and legal process at 2300 Wisconsin Avenue, N.W., Suite 200A, Washington, D.C. 20007 (the "**Pledgor**") and MAXIM CREDIT GROUP, LLC, a New York limited liability company, having an office at 600 Madison Avenue, 17th Floor, New York, New York 10022 (the "**Lender**").

*PRELIMINARY STATEMENTS:*

WHEREAS, 5225 Connecticut Owner LLC, a Delaware limited liability company (the "**Borrower**"), and the Lender have entered into a certain loan transaction on the date hereof (the "**Loan**"), pursuant to which the Lender has agreed to lend to the Borrower and others the amount of Ten Million Six Hundred Thousand and 00/100 Dollars ($10,600,000.00) (the "**Principal**");

WHEREAS, Pledgor is the owner of all of the limited liability company interests in the Borrower, and will obtain a direct and material financial benefit from the Lender's agreement to make the Loan;

WHEREAS, Lender's agreement to make the Loan is conditioned upon, among other things, the Pledgor entering into this Agreement;

NOW THEREFORE, to secure the Obligations of the Borrower, and in consideration of the Lender entering into the Loan Documents and making the Loan to the Borrower, the Pledgor hereby agrees for the benefit of the Lender as follows:

## 1.    INTERPRETATION OF THIS AGREEMENT

### *1.1    Terms defined.*

All capitalized terms used herein but not defined herein shall have the respective meanings set forth in that certain Promissory Note in the amount of Ten Million Six Hundred Thousand and 00/100 Dollars ($10,600,000.00) from Borrower to Lender as of even date herewith (the "**Note**"), which sets forth the terms of the Loan from Lender to Borrower. As used herein, the following terms shall have the respective meanings set forth below:

(a) "**Agreement**" shall have the meaning set forth in the introductory paragraph hereof.

(b) "**Collateral**" shall mean all Pledged Interests, books and records relating to the Pledged Interests and all rights, distributions, certificates, options, securities, security entitlements and other investment property or financial assets that may hereafter be received, receivable, distributed or exercised in respect of, or exchanged for, all or any of any of such Pledged Interests, and all proceeds of all of the foregoing.

(c) "**Distribution**" shall mean any distribution (whether in the form of cash or any other property), direct or indirect, made on account of any interest in Borrower at any time after the date hereof.

(d) "**Lender**" shall have the meaning set forth in the introductory paragraph hereof.

(e) "**Obligations**" shall mean all of the obligations of Borrower under the Note and all other documents evidencing or securing the Loan (collectively, the "**Loan Documents**"), and all obligations of Pledgor pursuant to this Agreement.

(f) "**Pledged Interests**" shall mean all the Pledgor's present and future right, title and interest in and to its interest as a member of Borrower, including, without limitation, its right to Distributions (liquidating or otherwise) and allocations.

(g) "**Pledgor**" shall have the meaning set forth in the introductory paragraph hereof.

(h) "**Security Interest**" shall have the meaning set forth in Section 2.1 hereof.

(i) "**Uniform Commercial Code**" shall mean the Uniform Commercial Code as in effect from time to time in the State of New York.

*1.2    Directly or Indirectly.*

Where any provision herein refers to action to be taken by any party, or provides that such party is prohibited from taking any action, such provision shall be applicable whether such action is taken directly or indirectly by such party.

*1.3    Section Headings and Construction.*

(a) **Section Headings.**    The titles of the Sections of this Agreement appear as a matter of convenience only, do not constitute a part hereof and shall not affect the construction hereof. The words "herein," "hereunder" and "hereto" refer to this Agreement as a whole and not to any particular Section or other subdivision. References to Sections are, unless otherwise specified, references to Sections of this Agreement.

(b) **Construction.**    Each covenant contained herein shall be construed (absent an express contrary provision herein) as being independent of each other covenant contained herein, and compliance with any one covenant shall not (absent such an express contrary provision) be deemed to excuse compliance with one or more other covenants.

*1.4    Governing Law.*

**THIS AGREEMENT SHALL BE GOVERNED BY, AND CONSTRUED AND ENFORCED IN ACCORDANCE WITH, THE LAW OF THE STATE OF NEW YORK, AND THE FEDERAL LAWS OF THE UNITED STATES OF AMERICA IN FORCE THEREIN, EXCLUDING CHOICE-OF-LAW PRINCIPLES OF THE LAW OF SUCH**

STATE THAT WOULD REQUIRE THE APPLICATION OF THE LAWS OF A JURISDICTION OTHER THAN SUCH STATE.

## 2. GRANT OF SECURITY INTEREST

### 2.1 *Grant of Security Interest.*

As security for the payment or performance, as the case may be, of the Obligations, the Pledgor does hereby pledge and grant a security interest (the "**Security Interest**") to the Lender in all of the Collateral.

### 2.2 *Perfection of Security Interest in Collateral.*

(a) **Pledged Interest**. Contemporaneously with the execution of this Agreement, the Pledgor shall (i) deliver, or cause to be delivered, to the Lender, all certificates, if any, or other instruments evidencing the Pledged Interest, (ii) deliver to the Lender UCC financing statements for recordation in the State of Delaware, (iii) cause Borrower to register the pledge of the Pledged Interests hereunder in its books and records, and/or (iv) take such other action as the Lender may direct in order to perfect the Security Interest. Borrower shall send written instructions in the form of Exhibit B hereto to each issuer thereof (an "**Issuer**"), and shall cause the Issuer to, and the Issuer shall, deliver to Lender the Confirmation Statement and Instruction Agreement in the form of Exhibit C hereto pursuant to which the Issuer will confirm that it has registered the pledge effected by this Agreement on its books and agrees to comply with the instructions of Lender in respect of the Pledged Interests without further consent of Borrower or any other Person. Notwithstanding anything in this paragraph, neither the written instructions nor the Confirmation Statement and Instruction Agreement shall be construed as expanding the rights of Lender to give instructions with respect to the Collateral beyond such rights set forth in this Agreement.

(b) **Delivery of Other Collateral**. If the Pledgor shall become entitled to receive or shall receive any certificate or other instrument, option or rights or other similar property in respect of the Collateral, whether as an addition to, in substitution of, or in exchange for, such Collateral or otherwise, the Pledgor agrees:

(i)     to accept the same as the agent of the Lender;

(ii)     to hold the same in trust on behalf of and for the benefit of the Lender; and

(iii)     to deliver the same to the Lender, or to such other party as the Lender may direct, on or before the close of business on the second business day following the receipt thereof by the Pledgor, in the exact form received, with the endorsement in blank of the Pledgor when necessary and with appropriate undated powers of attorney duly executed in blank (with signatures properly guaranteed), when necessary, to be held by the Lender, or such other party as directed by the Lender, subject to the terms of this Agreement, as additional Collateral.

*2.3*    ***Further Assurances.***

The Pledgor agrees, at its expense, to cooperate with the Lender and to execute and deliver, or cause to be executed and delivered, all such powers, proxies, instruments and documents, and take all such actions, as the Lender may from time to time reasonably request, for the better assuring and preserving of the perfection of the Security Interest herein granted to the Lender and the rights and remedies created hereby.

## 3.    REPRESENTATIONS, WARRANTIES AND COVENANTS.

*3.1*    ***Representations, Warranties and Covenants of Pledgor.***

The Pledgor represents, warrants and covenants that:

(a) **Right to Grant Security Interest**.    The Pledgor has the right to pledge and grant a security interest in the Collateral free of any encumbrances other than the liens created hereby;

(b) **Governmental Authorities**.    The Pledgor's execution and delivery of this Agreement and the pledging of the Collateral hereunder does not require the consent, approval or authorization of, or filing, registration or qualification with, any Governmental Authority (other than filing of UCC financing statements);

(c) **Pledged Interests**.    The limited liability company interest pledged under this Agreement has been duly and validly authorized and issued, is fully paid and no further contributions may be required in respect thereof, and evidence all of the Pledgor's limited liability company interest in Borrower;

(d) **Authority to Pledge**.    The Pledgor has rights in and good title to the Collateral and has full right, power and authority to pledge the Collateral pursuant hereto and to execute, deliver and perform its obligations in accordance with the terms of this Agreement, without the consent or approval of any other party (other than the consent of Borrower, which consent is set forth below);

(e) **Validity of Security Interest**.    Once the pledge of the Collateral hereunder is effective, the Lender will have a valid, legal and perfected first and prior security interest in all of the Collateral, and no party, other than the Lender shall have priority in such security interest; and

(f) **Absence of Other Liens**. The Pledgor is the legal and equitable owner of the Collateral free and clear of any pledge, security interest, lien, charge or other encumbrance of any nature whatsoever, and the Pledgor will make no further sale, assignment, pledge, mortgage, hypothecation or transfer of the Collateral.

### 3.2    Certain Rights Concerning Collateral.

(a) **Pledgor's Right to Act as Member**.    During the term of this Agreement, and unless an Event of Default shall exist, this Agreement shall not limit the Pledgor's rights to exercise the voting or other rights accruing to a member of Borrower on all member questions for all purposes. To that end, if the Lender transfers, or causes the transfer of, any Pledged Interests or other Collateral into its name or the name of its nominee, the Lender shall, upon the request of the Pledgor, unless an Event of Default shall exist, execute and deliver or cause to be executed and delivered to the Pledgor's proxies or other instruments with respect to such Pledged Interests and other Collateral authorizing the Pledgor or its nominees to vote or exercise such other rights with respect to such Pledged Interest or such other Collateral.

(b) **Lender's Right to Vote**. If an Event of Default shall exist, all rights of the Pledgor to exercise the voting and consensual rights and powers the Pledgor is entitled to exercise with respect to the Collateral pursuant to paragraph (a) of this Section 3.2 shall cease, and all such rights shall thereupon become vested in the Lender, which shall have the sole and exclusive right and authority to exercise all voting powers and membership rights pertaining to the Collateral, and all proxies or other instruments theretofore executed by the Lender shall terminate and thereafter be null and void and of no effect whatsoever. Upon any sale or other disposition of any part of the Collateral by the Lender pursuant to Section 4.2 and Section 4.3, all of the voting and consensual rights and powers referred to in the preceding sentence pertaining to the Lender shall in any event become vested in the party to whom such sale or disposition is made, which party shall have sole and exclusive right to exercise such voting and consensual right and powers.

### 3.3    Distributions.

(a) **Pledgor's Right to Distributions**.    During the term of this Agreement, and so long as no Event of Default shall exist, this Agreement shall not limit the Pledgor's right to receive and retain any and all Distributions in respect of the Collateral to the extent permitted under the Loan Documents.

(b) **Lender's Right to Distributions**. If an Event of Default shall exist, all rights of the Pledgor to receive and retain Distributions in respect of the Collateral that the Pledgor is entitled to receive and retain pursuant to Section 3.3(a) shall cease, and all such rights shall thereupon become vested in the Lender, which shall have the sole and exclusive right and authority to receive and retain any and all Distributions in respect of the Collateral. Any Distribution received by the Lender pursuant to the provisions of this Section 3.3(b) shall be applied by the Lender in accordance with the provisions of the Note.

## 4.    EVENTS OF DEFAULT; REMEDIES

### 4.1    Events of Default.

An "Event of Default" shall exist if any of the following occurs and is continuing:

(a) **Covenants**:    the Pledgor fails to comply with any of the provisions hereof, and such failure continues for more than thirty (30) days after the date on which the Pledgor has received written notice of such failure from the Lender; or

(b) **Warranties or Representations**:    any warranty, representation or other written statement by or on behalf of the Pledgor contained herein or in any certificate, instrument or other statement furnished in compliance herewith or with the Loan Documents shall have been false or misleading in any material respect when made and such misrepresentation is not cured within thirty (30) days after notice to Pledgor; or

(c) **Collateral**:    all or any part of the Collateral shall be attached or levied upon or seized in any legal proceeding, or held by virtue of any lien or distress, in any case for a period in excess of thirty (30) days; or

(d) **Additional Interests**:    the Pledgor consents to or approves the creation of any additional limited liability company interests in Borrower without the prior written consent of the Lender, or

(e) **Company Documents**:    the Pledgor, without the prior written consent of the Lender, modifies, amends or alters in any material respect the terms and conditions of the Operating Agreement of Borrower or Certificate of Formation, filed with the Delaware Secretary Department of State; or

(f) **Events of Default Under Loan Documents**:    any "Event of Default" exists under and as defined in the Loan Documents.

*4.2    Remedies.*

At any time during the continuance of an Event of Default, the Lender may take any or all of the following actions with respect to the Collateral:

(a) The Lender may exercise all of the rights and remedies of a secured party under the Uniform Commercial Code and other applicable law and all of the rights and remedies conferred hereby, it being expressly understood that no such remedy is intended to be exclusive of any other remedy or remedies, but each and every remedy shall be cumulative and shall be in addition to every other remedy given herein or now or hereafter existing at law or in equity or by statute, and may be exercised from time to time as often as may be deemed expedient by the Lender.

(b) The Lender shall have the right, subject to the mandatory requirements of applicable law to sell or otherwise dispose of all or any part of the Collateral, at public or private sale or at any broker's board or on any securities exchange, for cash, upon credit or for future delivery as the Lender shall deem appropriate. Each such purchaser at any such sale shall hold the Collateral sold absolutely free from any claim or right on the part of the Pledgor, and the Pledgor hereby waives (to the extent permitted by law) all rights of redemption, stay and appraisal that the Pledgor now has or may at any time in the future have under any rule of law or statute now existing or hereafter enacted.

*4.3*     ***Method of Sale and Conduct of Remedies.***

(a) The Pledgor and the Lender agree that forty-five (45) days' notice to the Pledgor of any public or private sale or other disposition of the Collateral or any portion thereof shall be reasonable notice thereof, and such sale shall be at such location as the Lender shall designate in such notice and during ordinary business hours, and any other requirement of notice, demand or advertisement for sale, to the extent permitted by law, is hereby waived by the Pledgor. The Lender shall have the right to bid at any public sale.

(b) The Lender shall not be obligated to make any sale of any Collateral if it shall determine not to do so, regardless of the fact that notice of sale of such Collateral has been given. The Lender may, without notice or publication, adjourn any public or private sale or cause the same to be adjourned from time to time by announcement at the time and place fixed for sale, and such sale may, without further notice, be made at the time and place to which the same was so adjourned.

(c) In case any sale of all or any part of the Collateral is made on credit or for future delivery, the Collateral so sold may be retained by the Lender until the sale price is paid by the purchaser or purchasers thereof, but the Lender shall not incur any liability in case any such purchaser or purchasers shall fail to take up and pay for the Collateral so sold and, in case of any such failure, such Collateral may be sold again upon like notice.

*4.4*     ***Certain Securities Law Restrictions.***

Anything herein to the contrary notwithstanding, and in view of the fact that federal and state securities laws may impose certain restrictions on the method by which a sale of any securities constituting all or part of the Collateral may be effected after and during the continuance of an Event of Default, the Pledgor agrees that, if an Event of Default shall exist hereunder, the Lender may, from time to time, attempt to sell all or any part of any such securities by means of a private placement, restricting the bidders and prospective purchasers to those who will represent or agree as to their investment intent or method of resale or both in a manner reasonably required by the Lender to assure compliance with applicable securities laws.  In so doing, the Lender may solicit offers to buy such securities or any part thereof, for cash, from a limited number of investors deemed by the Lender to be responsible parties who might be interested in purchasing such Securities. If the Lender solicits such offers from not fewer than three (3) such investors, then the acceptance by the Lender of the highest offer obtained therefrom shall be deemed to be a commercially reasonable method of disposition of such securities.

*4.5*     ***Lender Appointed Attorney-in-Fact.***

The Pledgor hereby appoints the Lender the Pledgor's attorney-in-fact, with full authority to act in the place and stead of the Pledgor and in the name of the Pledgor or otherwise at any time after an Event of Default shall exist, to take any action and to execute any instrument which the Lender may deem necessary or advisable to accomplish the purposes of this Agreement, including, without limitation:

(a) to ask, demand, collect, sue for, recover, compound, receive and give acquittance and receipts for moneys due and to become due under or in respect of any of the Collateral,

(b) to receive, endorse and collect all instruments made payable to the Pledgor representing any payment or Distribution in respect of the Collateral or any part thereof and to give full discharge for the same, and

(c) to file any claims or take any action or institute any proceedings that the Lender may deem necessary or desirable for the collection of any of the Collateral or otherwise to enforce the rights of the Lender with respect to any of the Collateral.

The Pledgor agrees that the Lender shall not have any liability for any acts of commission or omission, or for any error of judgment or mistake of fact or law, with respect to the exercise of the powers of attorney granted under this Section 4.5, unless such liability shall be due to the willful misconduct of the Lender. The powers of attorney granted under this Section 4.5 are coupled with and interest and shall be irrevocable for so long as any of the Obligations shall not have been fully and finally paid.

### 4.6    *Performance by the Lender for the Pledgor.*

If the Pledgor shall fail to do any act or thing that it has covenanted to do hereunder, or any representation or warranty of the Pledgor shall be breached, the Lender may, at its option, but shall not be required to, do the same or cause it to be done, or remedy any such breach, and charge the Borrower therefor, and the Borrower agrees to promptly reimburse the Lender therefor with interest at an interest rate per annum that is then borne by the Borrower pursuant to the terms of the Note. The Borrower shall pay all sums so paid or incurred by the Lender in respect of any of the foregoing and all costs and expenses (including attorneys' fees, legal expenses and court costs) that the Lender may incur in asserting, enforcing, defending or protecting the Security Interest herein granted on, or rights and interest in, the Collateral, or any of its rights or remedies under this Agreement or in respect of any of the transactions to be had hereunder and, until paid by the Borrower with interest at the rate aforesaid, such sums shall be secured by all of the Collateral and the proceeds from the sale thereof.

## 5.    EFFECT OF SALE, ETC.

### 5.1    *Title.*    Any sale or sales pursuant to the provisions of this Agreement, whether under any right or power granted hereby or pursuant to any legal proceedings, shall operate to divest the Pledgor of all right, title, interest, claim and demand whatsoever, either at law or in equity, of, in and to the Collateral, or any part thereof, so sold, and any property so sold shall be free and clear of any and all rights of redemption by, through or under the Pledgor.

### 5.2    *Application of Proceeds.*    The receipt by the Lender, or by any party authorized under any judicial proceedings to make any such sale, of the proceeds of any such sale shall be a sufficient discharge to any purchaser of the Collateral, or of any part thereof, sold as aforesaid; and no such purchaser shall be bound to see to the application of such proceeds, or be bound to inquire as to the authorization, necessity or propriety of any such sale. In the event that, at any

such sale, the Lender is the successful purchaser, it shall be entitled, for the purpose of making settlement or payment, to credit against the purchase price of such sale all or any portion of the Obligations.

### 5.3    *Restoration of Rights and Remedies.*

If the Lender shall have instituted any proceeding to enforce any right or remedy hereunder, and such proceeding shall have been discontinued or abandoned for any reason, or shall have been determined adversely to the Lender, then and in every such case, the Lender shall, subject to any determination in any such proceeding, be restored severally and respectively to its former position hereunder, and thereafter all rights and remedies of the Lender shall continue as though no such proceeding had been instituted.

### 5.4    *Application of Proceeds.*

The proceeds of any exercise of rights with respect to the Collateral, or any part thereof, and the proceeds and the avails of any remedy under this Agreement shall be paid to the Lender and applied by the Lender in accordance with the Note.

### 5.5    *Waivers by Pledgor.*

(a) **Acceptance**.    The Pledgor hereby waives notice of acceptance of this Agreement. The Pledgor further waives presentment and demand for payment of any of the Obligations, protest and notice of dishonor or default with respect to any of the Obligations, and all notices to which the Pledgor might otherwise be entitled, except as otherwise expressly provided in this Agreement.

(b) **Waiver of Valuations, etc**.    The Pledgor (to the extent that it may lawfully do so) covenants that it shall not at any time insist upon or plead, or in any manner claim or take the benefit or advantage of, any stay, valuation, appraisal, redemption or extension law now or at any time hereafter in force that, but for this waiver, might be applicable to any sale made hereunder or under any judgment, order or decree based on this Agreement, and the Pledgor (to the extent that it may lawfully do so) hereby expressly waives and relinquishes all benefit and advantage of any and all such laws and hereby covenants that it will not hinder, delay or impede the execution of any power in this Agreement or therein granted and delegated to the Lender, but that it will suffer and permit the execution of every such power as though no such law or laws had been made or enacted.

(c) **Dealings with Borrower and Others**.    The Pledgor does hereby waive: notice of the extension of credit from time to time by Lender to Borrower and the creation, existence or acquisition of any Obligations hereby secured, including, without limitation, notice of the amount of any indebtedness of Borrower to Lender from time to time, subject, however, to Pledgor's right to make inquiry of Lender to ascertain the amount of such indebtedness at any reasonable time; notice of adverse change in Borrower's financial condition or of any other fact which might increase Pledgor's risk hereunder; notice of presentment for payment, demand, protest and notice thereof as to any instrument executed by Borrower in favor of Lender; to the extent permitted under applicable law and/or required by this Agreement, notice of default; and all

other notices and demands to which the Pledgor might otherwise be entitled (except for any notices expressly required under the Agreement). The Pledgor further waives any statutory or other rights to require Lender to institute suit against Borrower or any other obligor or guarantor in respect of the Obligations or to exhaust its rights and remedies against Borrower or any other such obligor or guarantor. Pledgor accepts the full range of risk encompassed within a contract of continuing guaranty, including the possibility that the Borrower will incur indebtedness after its financial condition (including its ability to pay debts when they fall due) has deteriorated. Pledgor waives the benefit of any applicable law having a contrary effect. The Pledgor further waives any defense arising by reason of any disability or other defense of Borrower or by reason of the cessation from any cause whatsoever of the liability of Borrower (except for payment in full of the Obligations), and any other legal or equitable suretyship defense. Without limiting the foregoing, the Pledgor shall not be relieved of Pledgor's obligations hereunder by virtue of any time or indulgences granted by Lender to Borrower. Pledgor hereby irrevocably appoints Borrower as the Pledgor's agent such that any agreement made between Lender and Borrower with respect to any waiver, release or amendment of the terms of the Loan Documents, the Note and any Other Loan Documents, shall be deemed to have been agreed and consented to by the Pledgor and the execution of any document by Borrower evidencing any such agreement shall be deemed to have been executed by Borrower as principal and as authorized agent of the Pledgor. Until all of the Obligations shall have been satisfied in full, the Pledgor shall have no right of subrogation, reimbursement or indemnity whatsoever and no right of recourse to or with respect to any assets or property of Borrower or to any collateral for the Obligations. Nothing shall discharge or satisfy the Obligations secured hereby except the full payment of the Obligations which shall, as between the Pledgor and Lender and at the option of Lender, forthwith become due and payable if there shall be filed against any one or more of Borrower or the Pledgor a petition under any bankruptcy, insolvency, reorganization or arrangement or similar laws for appointment of a receiver or trustee, if any one or more of Borrower or the Pledgor makes an assignment for the benefit of creditors, or if an Event of Default shall exist. It is the intent of the parties that this Agreement shall remain in full force and effect notwithstanding any act or thing that might otherwise operate as a legal or equitable discharge of a surety.

## 6.    IRREVOCABLE PROXY

Notwithstanding any of the foregoing, solely with respect to Article 8 Matters, Pledgor hereby irrevocably grants and appoints Lender, from the date of this Agreement until the termination of this Agreement in accordance with its terms, as Pledgor's true and lawful proxy, for and in Pledgor's name, place and stead to vote the Pledged Interests in Borrower by Pledgor, whether directly or indirectly, beneficially or of record, now owned or hereafter acquired, with respect to such Article 8 Matters. The proxy granted and appointed in this Section 6 shall include the right to sign Pledgor's name (as a member of Borrower) to any consent, certificate or other document relating to an Article 8 Matter and the Pledged Interests that applicable law may permit or require, to cause the Pledged Interests to be voted in accordance with the preceding sentence. Pledgor hereby represents and warrants that there are no other proxies and powers of attorney with respect to an Article 8 Matter and the Pledged Interests that Pledgor may have granted or appointed.  Pledgor will not give a subsequent proxy or power of attorney or enter into any other voting agreement with respect to the Pledged Interests with respect to any Article 8 Matter and any attempt to do so with respect to an Article 8 Matter shall be void and of no effect.

As used herein, "Article 8 Matter" means any action, decision, determination or election by Borrower or its member(s) that its limited liability company interests or other equity interests, or any of them, be, or cease to be, a "security" as defined in and governed by Article 8 of the Uniform Commercial Code, and all other matters related to any such action, decision, determination or election.

The proxies and powers granted by the Pledgor pursuant to this Section 6 are coupled with an interest and are given to secure the performance of the Pledgor's obligations.

## 7. MISCELLANEOUS

### 7.1 *No Waiver.*

No failure on the part of the Lender to exercise, and no delay in exercising, any right, power or remedy hereunder shall operate as a waiver thereof, nor shall any single or partial exercise of any such right, power or remedy by the Lender preclude any other or further exercise thereof or the exercise of any other right, power or remedy. All remedies hereunder are cumulative and are not exclusive of any other remedies provided by law. The Lender shall not be deemed to have waived any rights hereunder or under any other agreement or instrument unless such waiver shall be in writing and signed by the Lender and the Pledgor.

### 7.2 *Lender's Fees and Expenses.*

The Pledgor will, upon demand, pay to the Lender the amount of any and all expenses, including the fees and expenses of its counsel and of any experts or agents that the Lender may incur in connection with (i) the sale of, collection from, or other realization upon, any of the Collateral, (ii) the exercise or enforcement of any of the rights of the Lender hereunder, or (iii) the failure by the Pledgor to perform or observe any of the provisions hereof. In addition, the Pledgor will indemnify and hold the Lender harmless from and against any and all liability incurred by the Lender hereunder or in connection herewith, unless such liability shall be due to the willful misconduct of the Lender. Any such amounts payable as provided hereunder or thereunder shall be secured hereby.

### 7.3 *Benefits of this Agreement.*

All warranties, representations and covenants made by the Pledgor herein or in any certificate or other document or instrument delivered by it shall be considered to have been relied upon by the Lender and shall survive the delivery to the Lender of the Collateral regardless of any investigation made by the Lender. All statements in any such certificate or other instrument shall constitute warranties and representations by the Pledgor hereunder. This Agreement shall be binding upon the Pledgor and its successors and assigns, and shall inure to the benefit of and be enforceable by the Lender and its successors and assigns.

### 7.4 *Obligations Absolute; Recourse; No Marshaling.*

(a) This Agreement is an absolute, unconditional, continuing and irrevocable obligation of the Pledgor and shall remain in full force and effect without respect to future changes in conditions, including change of law or any invalidity or irregularity with respect to the issuance of any obligations of Borrower to Lender or with respect to the execution and delivery of any agreement between Borrower and Lender. The Pledgor further agrees that to the extent Borrower makes a payment or payments to Lender, which payment or payments or any part thereof are subsequently invalidated, declared to be fraudulent or preferential, set aside or required, for any of the foregoing reasons or for any other reason, to be repaid or paid over to a trustee, receiver or any other party under any bankruptcy, insolvency or similar law, then, to the extent of such payment or repayment, the Obligations or part thereof intended to be satisfied shall be revived and continued in full force and effect as if said payment had not been made.

(b) Lender shall have the right to seek recourse against the Collateral to the full extent provided for herein, which rights shall be absolute and shall not in any way be impaired, deferred or otherwise diminished by reason of any inability of Lender to claim the full amount of the Obligations from Borrower under any applicable law. No election to proceed in one form of action or proceeding, or against any party, or on any obligation, shall constitute a waiver of Lender's right to proceed in any other form of action or proceeding or against other parties unless Lender has expressly waived such right in writing. Specifically, but without limiting the generality of the foregoing, no action or proceeding by Lender against Borrower, any guarantor of the Obligations or any other party, under any document or instrument evidencing or securing the Obligations shall serve to diminish the liability of the Pledgor hereunder, except to the extent Lender fully and unconditionally realizes full indefeasible payment of the Obligations by such action or proceeding, notwithstanding the effect of any such action or proceeding upon the Pledgor's rights of subrogation, reimbursement or contribution against Borrower or any other party.

(c) The Pledgor consents and agrees that Lender shall be under no obligation to marshal any assets in favor of the Pledgor or against or in payment of any or all of the Obligations.

7.5    *Actions by Lender.*

The Pledgor consents and agrees that, without notice to Pledgor and without affecting or impairing the obligations of Pledgor hereunder, Lender may, by action or inaction: compromise, settle, extend the time for payment of the Obligations with Borrower or any party liable therefor; release Borrower or any party from its liability for the Obligations; release all or any part of the security for the Obligations; modify any instruments or agreements relating to the Obligations (except this Agreement); extend the time for making any deposit or granting a security interest in property securing the Obligations; or refuse or fail to enforce its rights under any agreement or instrument evidencing or securing the Obligations.

7.6    *Notices.*

All notices or demands by either party to the other relating to this Agreement shall be in writing and sent in accordance with the Note; provided that notices or demands to Pledgor shall be sent to Pledgor at the address for Pledgor set forth above.

7.7    *Severability.*

In case any one or more of the provisions contained in this Agreement shall be invalid, illegal or unenforceable, the remaining provisions contained herein shall not in any way be affected or impaired.

7.8    *Counterparts.*

This Agreement may be executed in one or more counterparts and shall be effective when at least one counterpart shall have been executed by each party hereto, and each set of counterparts that, collectively, show execution by each party hereto shall constitute one duplicate original.

7.9    *Amendments.*

No provision of this Agreement shall be waived, amended, modified or supplemented except by a written instrument executed by the Pledgor and the Lender.

7.10    *Termination.*

This Agreement and the Security Interest shall terminate when all the Obligations have been fully and finally paid, at which time the Lender shall deliver to the Pledgor all certificates, if any, evidencing the Collateral then held by it and such other documents as the Pledgor shall reasonably request to evidence such termination.

7.11    *Acknowledgment and Consent.*

Pledgor shall cause Borrower to execute and deliver to Lender an Acknowledgment and Consent with respect to this Agreement in the form of Exhibit A, in connection with the execution and delivery of this Agreement.

[SIGNATURES APPEAR ON THE FOLLOWING PAGE]

IN WITNESS WHEREOF, the parties have executed this Pledge and Security Agreement as of the date first written above.

**PROJECT DC CHEVY CHASE LLC,**
a Delaware limited liability company,

By:    Equitable Housing Solutions LLC,
       a Delaware limited liability company,
       its manager

By:    American Housing Capital LLC,
       a District of Columbia limited liability company,
       its manager

By: _____
Name: Adam Lobene
Title:  Sole Member and Manager

IN WITNESS WHEREOF, the parties have executed this Pledge and Security Agreement as of the date first written above.

**MAXIM CREDIT GROUP, LLC,**
a New York limited liability company

By: _____
Name: Eric Chan
Title:   Authorized Signatory

## SCHEDULE 1
## DESCRIPTION OF PLEDGED INTERESTS

| Issuer | Owner | Percentage of Limited Liability Company Interests |
|---|---|---|
| 5225 Connecticut Owner LLC | Project DC Chevy Chase LLC | 100% |

**EXHIBIT A**
**FORM OF ACKNOWLEDGMENT AND CONSENT**

**THE UNDERSIGNED HEREBY ACKNOWLEDGES RECEIPT OF A COPY OF THE PLEDGE AND SECURITY AGREEMENT DATED AS OF THE DATE HEREOF (AS AMENDED, SUPPLEMENTED OR OTHERWISE MODIFIED FROM TIME TO TIME, THE "PLEDGE AGREEMENT"), AND AGREES THAT PROJECT DC CHEVY CHASE LLC, A DELAWARE LIMITED LIABILITY COMPANY, IS BOUND THEREBY. THE UNDERSIGNED AGREES TO NOTIFY LENDER PROMPTLY IN WRITING OF THE OCCURRENCE OF ANY OF THE EVENTS DESCRIBED IN SECTION 2.2(B).**

Date: _____

        **5225 CONNECTICUT OWNER LLC,**
        a Delaware limited liability company

        By:    Project DC Chevy Chase LLC,
               a Delaware limited liability company,
               its sole member

        By:    Equitable Housing Solutions LLC,
               a Delaware limited liability company,
               its manager

        By:    American Housing Capital LLC,
               a District of Columbia limited liability company,
               its manager

        By: _____
        Name: Adam Lobene
        Title:  Sole Member and Manager

**EXHIBIT B**
**FORM OF INSTRUCTION TO REGISTER PLEDGE**

January 28, 2025

To:    5225 Connecticut Owner LLC

In accordance with the requirements of that certain Pledge and Security Agreement, dated as the date hereof (as amended, supplemented or otherwise modified from time to time, the "**Pledge Agreement**"), between Maxim Credit Group, LLC, a New York limited liability company (the "**Lender**"), and Project DC Chevy Chase LLC, a Delaware limited liability company (the "**Pledgor**") (defined terms used herein as therein defined), you are hereby instructed, notwithstanding your and our understanding that the limited liability company interest described below is a security under the Uniform Commercial Code, as a precaution in the event that such interest was nevertheless held not to be a security and to better assure the perfection of the security interest of Lender in such interests, to register the pledge of the following interests in the name of Lender as follows:

The 100% limited liability company interest of the undersigned in 5225 Connecticut Owner LLC, a Delaware limited liability company (the "**Issuer**") as listed on Schedule 1 to the Pledge Agreement including without limitation all of the following property now owned or at any time hereafter acquired by Pledgor or in which Pledgor now has or at any time in the future may acquire any right, title or interest:

all additional limited liability company interests of, or other equity interests in, the Issuer and options, warrants, and other rights hereafter acquired by Pledgor in respect of such limited liability company interests or other equity interests (whether in connection with any capital increase, recapitalization, reclassification, or reorganization of the Issuer or otherwise) (all such limited liability company interests and other equity interests, including those described on Schedule 1 to the Pledge Agreement, and all such options, warrants and other rights being hereinafter collectively referred to as the "**Pledged Interests**");

all certificates, instruments, or other writings representing or evidencing the Pledged Interests, and all accounts and general intangibles arising out of, or in connection with, the Pledged Interests;

any and all moneys or property due and to become due to Pledgor now or in the future in respect of the Pledged Interests, or to which Pledgor may now or in the future be entitled to in its capacity as a member of the Issuer, whether by way of a dividend, distribution, return of capital, or otherwise in respect of the Pledged Interest;

all other claims which Pledgor now has or may in the future acquire in its capacity as a shareholder of the Issuer against the Issuer and its property;

all rights of Pledgor under the Operating Agreement, including, without limitation, all voting and consent rights of Pledgor arising thereunder or otherwise in connection with Pledgor's ownership of the Pledged Interests; and

to the extent not otherwise included, all Proceeds of any or all of the foregoing.

You are hereby further authorized and instructed to execute and deliver to Lender a Confirmation Statement and Instruction Agreement, substantially in the form of Exhibit C to the Pledge Agreement and, to the extent provided more fully therein, to comply with the instructions of Lender in respect of the Collateral without further consent of, or notice to, the undersigned. Notwithstanding anything in this paragraph, this instruction shall not be construed as expanding the rights of Lender to give instructions with respect to the Collateral beyond such rights set forth in the Pledge Agreement.

[SIGNATURES APPEAR ON THE FOLLOWING PAGE]

Very truly yours,

**LENDER:**

**MAXIM CREDIT GROUP, LLC,**
a New York limited liability company


By: _____
Name:
Title:  Authorized Signatory


**PLEDGOR:**

**PROJECT DC CHEVY CHASE LLC,**
a Delaware limited liability company,

By:    Equitable Housing Solutions LLC,
       a Delaware limited liability company,
       its manager

By:    American Housing Capital LLC,
       a District of Columbia limited liability company,
       its manager


By: _____
Name:  Adam Lobene
Title:    Sole Member and Manager

## EXHIBIT C
## FORM OF CONFIRMATION STATEMENT AND INSTRUCTION AGREEMENT

January 28, 2025

To:    5225 Connecticut Owner LLC

Pursuant to the requirements of that certain Pledge and Security Agreement dated as of the date hereof (as amended, supplemented or otherwise modified from time to time, the "**Pledge Agreement**"), between Maxim Credit Group, LLC, a New York limited liability company (the "**Lender**"), and Project DC Chevy Chase LLC, a Delaware limited liability company (the "**Pledgor**") (defined terms used herein as therein defined), this Confirmation Statement and Instruction Agreement relates to those limited liability company interests (the "**Pledged Interests**"), as further described on Schedule 1 of the Pledge Agreement, issued by 5225 Connecticut Owner LLC, a Delaware limited liability company.

The Pledged Interests are not (i) "investment company securities" (within the meaning of Section 8-103 of the Code) or (ii) dealt in or traded on securities exchanges or in securities markets.

The Pledged Interests are "securities" (within the meaning of Sections 8-102(a)(15) and 8-103 of the Code), and therefore, for purposes of perfecting the security interest of Lender therein, the Issuer agrees as follows:

On the date hereof, the registered owner of 100% of 5225 Connecticut Owner LLC is Project DC Chevy Chase LLC.

The registered pledgee of the Pledged Interests is:

Maxim Credit Group, LLC
Taxpayer I.D. Number: _____

There are no liens of the Issuer on the Pledged Interests or any adverse claims thereto for which the Issuer has a duty under Section 8-403 of the Code. The Issuer has by book-entry registered the Pledged Interests in the name of the registered pledgee on or before the date hereof. No other pledge is currently registered on the books and records of the Issuer with respect to the Pledged Interests.

Until the Principal is paid in full (exclusive of any indemnification or other obligations which are expressly stated in any of the Loan Documents to survive satisfaction of the Note), the Issuer agrees to: (i) comply with the instructions of Lender, without any further consent from Pledgor or any other Person, in respect of the Pledged Interests; and (ii) disregard any request made by Pledgor or any other person which contravenes the instructions of Lender with respect to the Pledged Interests. Notwithstanding anything in this paragraph, this Confirmation Statement and Instruction Agreement shall not be construed as expanding the rights of Lender to give instructions with respect to the Collateral beyond such rights set forth in the Pledge Agreement.

Very truly yours,

**5225 CONNECTICUT OWNER LLC,**
a Delaware limited liability company

By:    Project DC Chevy Chase LLC,
        a Delaware limited liability company,
        its sole member

By:    Equitable Housing Solutions LLC,
        a Delaware limited liability company,
        its manager

By:    American Housing Capital LLC,
        a District of Columbia limited liability company,
        its manager

By: _____
Name: Adam Lobene
Title:  Sole Member and Manager

**ACKNOWLEDGED AND AGREED:**

**LENDER:**

**MAXIM CREDIT GROUP, LLC,**
a New York limited liability company

By: _____
Name:
Title:  Authorized Signatory

**PLEDGOR:**

**PROJECT DC CHEVY CHASE LLC,**
a Delaware limited liability company,

By:    Equitable Housing Solutions LLC,
         a Delaware limited liability company,
         its manager

By:    American Housing Capital LLC,
         a District of Columbia limited liability company,
         its manager

By: _____
Name:  Adam Lobene
Title:   Sole Member and Manager